UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**FRANKLIN GARDNER**,                                        :
                                                             :
                    Plaintiff,         :
                                                             :  **MEMORANDUM DECISION AND**
           – against –                            :  **ORDER**
                                                             :
                                                             :  20-CV-3452 (AMD) (SJB)
**SEAN RYAN, ALEXANDER SAVINO,**                             :
**CAPTAIN RONALD WILSON**,                                   :
                                                             :
                    Defendants.        :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

Before the Court is the defendants' summary judgment motion on the *pro se* plaintiff's complaint alleging constitutional violations under 42 U.S.C. § 1983. On August 17, 2020, I granted the plaintiff's motion to proceed *in forma pauperis* and dismissed claims against the Superintendent of Rikers Island Correctional Facility, Cynthia Brann, the New York City Department of Correction, Captain Ronald Wilson and the City of New York. (ECF No. 10.) I also granted the plaintiff leave to file an amended complaint. (*Id.*) On October 1, 2021, the plaintiff filed an amended complaint against Corrections Officers Sean Ryan and Alexander Savino, as well as Captain Ronald Wilson. (ECF No. 35.) As explained below, the defendants' motion is granted.

## BACKGROUND[1]

The plaintiff alleges that he suffered serious injury while he was a pre-trial detainee in the custody of the New York City Department of Corrections ("DOC"). On the morning of March

---

[1] The following facts are drawn from the defendants' motion for summary judgment, subsequent reply briefs, Rule 56.1 Statement and accompanying exhibits, and the plaintiffs' submissions.

16, 2018, Officer Alexander Savino was driving the plaintiff and other inmates to Kings County Supreme Court; Officer Sean Ryan was also on the bus. The plaintiff was cuffed to another inmate inside a caged area near Officer Savino. (ECF No. 51 at ¶3.) The plaintiff alleges that Officer Savino "was driving erratic[ally], accelerating rapidly, decelerating and stopping suddenly, making very fast turns, causing the detainees to slide off their seats, crashing into each other, and into the cage." (ECF No. 35 at 3.)[2] Officer Savino stopped at a stop sign before merging onto the Brooklyn Queens Expressway. (ECF No. 51 at ¶ 6.) As he attempted to merge, a car ahead of him slowed unexpectedly, and the two vehicles collided. (*Id*.; ECF No. 50-2, Ex. B.) Officers Savino and Ryan stepped out momentarily to speak to the driver of the car. (ECF No. 51 at ¶ 7.) The officers did not ask the inmates if they were injured, and the plaintiff did not say anything to the officers. (*Id*. at ¶¶8–9.)

When they arrived Kings County Supreme Court, the plaintiff told Captain Wilson about the accident and requested immediate medical attention for back and neck pain. (*Id*. at ¶¶10–11.) Approximately fifteen minutes later, the plaintiff got back on the bus, and Officers Savino and Ryan drove him to the Brooklyn House of Detention. (*Id*. at ¶¶12–13.) Captain Wilson followed behind. (ECF No. 35 at ¶11.) The plaintiff did not see a doctor at that point; Captain Wilson told him that the clinic was not seeing patients because the building's sprinklers had malfunctioned. The plaintiff was taken back to Rikers Island that evening. (*Id*. at ¶14.) He claims that he was in "massive pain. during the court appearance and on the drive back to Rikers Island. (ECF No. 35 at ¶16.) A physician's assistant examined the plaintiff at 2:52 a.m. on March 17, 2018. (ECF No. 51 at ¶16.) She noted that he came into the clinic "without difficulty," confirmed he never lost consciousness during or after the accident, and reported only

---

[2] The plaintiff could not see the speedometer. (*Id*.)

"minor stiffness in [his] neck." (ECF No. 50-4, Ex. D at 2.) The DOC Injury to Inmate Report also noted that the plaintiff's "general physical exam [was] unremarkable." (ECF No. 50-4, Ex. C at 1.) The physician's assistant prescribed him mild pain medication and told him that he could have a follow-up appointment within 72 hours if he needed one. (ECF No. 50-4, Ex. D at 2–3.)

Both parties agree that on March 28, 2018, the plaintiff filed a grievance pursuant to the Inmate Grievance Resolution Program[3] ("IGRP"), in which he complained that Officer Savino drove the DOC bus "as if trying to kill us," and that no one "offered medical attention" for his injuries. (ECF No. 50-4 Ex. F.) However, the parties dispute whether the plaintiff exhausted the administrative appeals process as required by the IGRP to pursue a claim in federal court. According to the defendants, the plaintiff did not appeal his grievance to the Commanding Officer, Division Chief, or DOC Central Officer Review Committee ("CORC"). (ECF No. 51 at ¶¶ 17–20.) The plaintiff responds that he "filed [notarized] grievances at every level as required by the [PLRA]." (ECF No. 56 ¶¶ 18–21; ECF No. 59 at 7.) According to his affidavits, he appealed to the Commanding Officer fifteen days after filing his initial grievance. (ECF No. 59 at 8.) He did not receive a response. Fifteen days after he filed the appeal, he appealed to the Division Chief. (*Id.*) And fifteen days after that, he "appealed to the [CORC] and waited 10 days [with] still no reply." (*Id.*) The plaintiff did not include this information in the amended

---

[3] The Court takes judicial notice of the N.Y.C. DOC Directive 3376R-A (effective Dec. 10, 2018), which codifies the IGRP procedures in effect at the time of the defendants' alleged violation (the "IGRP Directive"). *See Sanders v. Cty. of N.Y.*, No. 16-CV-7246, 2018 WL 3117508, at *4 n.1 (S.D.N.Y. June 25, 2018) ("It is a common practice in this District to take judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim."; *House v. City of New York*, No. 18-CV-6693, 2020 WL 6891830, at *9 (S.D.N.Y. Nov. 24, 2020) (same).

3

complaint,[4] and he has not submitted records of these appeals.  He claims, however, that the evidence was either "lost or destroyed."  (*Id*.; ECF No. 56 at ¶ 20.)  He also claims he made "several 311 calls concerning [his] grievances filed and denial of medical attention."  (ECF No. 59-2, Ex. F.)

In 2022, the plaintiff retained a lawyer from Appellate Advocates,[5] Cynthia Colt.  On August 25, 2022, Ms. Colt sent two letters to Great Meadow Correctional Facility Superintendent Christopher Miller and Sing Sing Correction Facility Superintendent Michael Capra, requesting "important legal documents that [the plaintiff] needs for ongoing litigation."  (ECF No. 59-2, Ex. C at 2–3.)  On December 5, 2022, Ms. Colt sent a second letter to another Great Meadow superintendent, Dennis Bradford, requesting the same documents because "[the plaintiff] has not yet received any of his property from Sing Sing."  (*Id*. at 4.)

## LEGAL STANDARD

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court does not resolve factual disputes; rather, the Court determines whether there are any disputed issue of material fact.  *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987).  "A fact is material when it might affect the outcome of the suit under governing law."  *McCarthy v. Dun & Bradstreet*

---

[4] The plaintiff engaged a paralegal at Sing Sing to help him draft the complaint and the amended complaint.  This person "expressed to [the] plaintiff that we do not need to be lengthy in the complaint concerning the grievance."  (ECF No. 59 at 7) (cleaned up).

[5] Appellate Advocates is a non-profit operating in New York City that provides criminal appellate representation for indigent clients.

4

*Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).  A dispute "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *Federal Deposit Insurance Corp. v. Great American Insurance Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex*, 477 U.S. at 323).  Once that burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. (citing *Anderson*, 477 U.S. at 249).

"All evidence submitted on the motion is to be construed in the manner most favorable to the nonmoving party." *Horvath v. Westport Library Association*, 362 F.3d 147, 151 (2d Cir. 2004).  However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Federal Deposit Insurance Corp.*, 607 F.3d at 292 (first quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

## DISCUSSION

### I. Local Civil Rule 56.1

Local Civil Rule 56.1(a) requires a party moving for summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  If the opposing party does not respond, the material facts contained in the moving party's statement are deemed admitted as a matter of law.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003); *see also* Local Civ. R. 56.1(c).  Further, "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible . . . ." Local Civ. R.

5

56.19(d). "While *pro se* litigants are not excused from meeting the requirements of Local Rule 56.1, where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted) (cleaned up).

The Government argues that the Court should deem its Rule 56.1 Statement fully admitted because the plaintiff "[does] not dispute any of the material facts asserted by defendants." (ECF No. 63 at 1.) While it is true that the plaintiff's Rule 56.1 Statement "largely reiterates" the defendant's statements of fact, and, at times "does not cite to admissible evidence," (ECF No. 63 at 2), the plaintiff's handwritten opposition raises relevant factual issues and cites to the record with consistency. Moreover, because the plaintiff is *pro se*, the Court construes his filings liberally. *Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *3 (S.D.N.Y. July 19, 2016); *Wiggins*, 2021 WL 706720, at *1 n.1. Accordingly, the Court has reviewed the record to determine whether there are any material, disputed issues of fact.

## II. The Statutory Exhaustion Requirement

"No action shall be brought with respect to prison conditions under section 1983 [of Title 42 of the United States Code], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)). The PLRA exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To exhaust administrative remedies properly, "prisoners must 'complete the

administrative review process in accordance with the applicable procedural rules.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). These "rules . . . are defined not by the PLRA, but by the prison grievance process itself."

The IGRP, which governs this process for the New York DOC, mandates that an inmate file a grievance report with the Office of Constituent and Grievance Services, or call 311. IGRP Directive § V. If the inmate receives an unfavorable decision, he must appeal that decision to the facility's Commanding Officer, then to the Division Chief, and finally to the CORC. *Id*. at §§ VII–IX.

If an inmate predicts that his grievance will be denied, that "prediction[,] . . . even if wholly reasonable, does not warrant depriving the prison administration of the opportunity to address the claim in the first instance, a paramount goal of the PLRA." *Johnson v. Killian*, No. 7-CV-6641, 2009 WL 1066248, at *5 (S.D.N.Y. Apr. 21, 2009); *Dixon v. Laboriel*, No. 01-CV-3632, 2010 WL 2365860, at *4 (S.D.N.Y. June 10, 2010) *aff'd*, 433 Fed. App'x 48 (2d Cir. 2011) (Summary Order). It is well-established that "even if an inmate does not receive a response to his grievance, he fails to exhaust administrative remedies if he does not avail himself of the available appeals process." *Barlow v. Mayor of N.Y.*, No. 19-CV-6786, 2021 WL 3793773, at *5 (E.D.N.Y. Aug. 26, 2021); *Martinez v. Schriro*, No. 14-CV-3965, 2017 WL 87049, at *2 (S.D.N.Y. Jan. 9, 2017); *Tyler v. Argo*, No. 14-CV-2049, 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014).

Further, "[w]hen a defendant raises a prisoner's failure to comply with the PLRA's exhaustion requirement, the failure is properly assessed as an affirmative defense." *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, No. 99-CV-3455, 2000 WL 274184, at *3 (S.D.N.Y. Mar. 13, 2000); *see also Jones v. Bock*, 549 U.S. 199, 217 (2007). The

7

defendants "bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (cleaned up). Any factual disputes regarding the defendants' failure to exhaust must be decided by the Court as a matter of law. *Id*.

### III. Whether the Plaintiff Exhausted Administrative Remedies

The defendants assert that the plaintiff did not exhaust his administrative remedies. In particular, they say that the plaintiff's "conclusory" statements "[do] not and cannot establish that he . . . availed himself of the appeals process." (ECF No. 63 at 3). Failure to exhaust is an affirmative defense that the defendants "bear the initial burden of establishing." *Hubbs*, 788 F.3d at 59. The defendants have not submitted evidence of the efforts, if any, they took to confirm or refute the plaintiff's factual allegations. *See Livingston v. Piskor*, 215 F.R.D. 84 (W.D.N.Y. 2003) (reviewing defendant's affidavits confirming "a search [was] made of the records at Attica regarding plaintiff, and that [the staff] could find no record of any grievance").

The plaintiff, on the other hand, alleges that he appealed his grievance according to the procedures set forth in the IGRP, and that he believes the evidence has since been "lost or destroyed." (ECF No. 59 at 8; ECF No. 56 at ¶ 20.) He submitted records of his initial March 22, 2018 call to 311. (ECF No. 59, Ex. F.) In his affidavit, he states that he made "several [other] 311 calls concerning [his] grievances filed and denial of medical attention." (*Id*.) The plaintiff also submitted copies of three letters that his lawyer sent to the Great Meadows and Sing Sing superintendents in which she requested "lost property"—presumably, the records of the plaintiff's appeal—that "[the plaintiff] needs for ongoing litigation." The record does not show that the superintendents ever responded, and the defendants do not address this claim.

8

The defendants also assert that "it is clear from plaintiff's own pleading that he did not exhaust the IGRP process" (ECF No. 52 at 8), but this is not persuasive. The pleading does not say anything about exhaustion; rather, the plaintiff alleges that he "used the prisoner grievance procedure available [to him]," and that he never received a response. (ECF No. 35 at ¶ 14.) [6]

Under these circumstances, summary judgment on the exhaustion issue is not warranted.

## IV. Deliberate Indifference to Medical Needs

To state a cause of action under 42 U.S.C. § 1983, "a plaintiff must allege that some person acting under color of state law deprived him of a federal right." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60–61 (2d Cir. 2012) (internal quotations omitted). The plaintiff must identify the federally protected right that the defendants violated. *See Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002) (plaintiffs cannot simply claim a violation of § 1983, because § 1983 "by itself does not protect anyone against anything") (internal quotations omitted). Accordingly, the plaintiff must show that (1) the defendant acted under color of state law and that (2) as a result of the defendant's actions, the plaintiff suffered a denial of federal statutory rights or constitutional rights or privileges. *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Additionally, "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998).

Because the plaintiff was a pre-trial detainee at the time he was allegedly denied medical care, his claim falls under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted); *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("pretrial detainees . . . rely on the constitutional guarantee of 'due process'").

---

[6] The plaintiff also said that the paralegal who helped him draft the complaint told him he did "not need to be lengthy in the complaint concerning the grievance." (ECF No. 59 at 7).

9

The plaintiff does not identify a specific claim in the amended complaint. Instead. he seeks remedies for the defendants' "disregard to plaintiff's safety and medical attention" and "deliberate indifference by delaying and thwarting the medical attention plaintiff needed." (ECF No. 35 at 5.) In his summary judgment briefing, however, the plaintiff claims (1) deliberate indifference to medical needs, (2) deliberate indifference to inmate safety, and (3) a New York state law claim for negligence. (ECF No. 59 at 1.) The standard for evaluating deliberate indifference to medical need or inmate safety is the same. *See Bright v. Annucci*, No. 18-CV-11111, 2021 WL 4461682, at *10 (S.D.N.Y. Sept. 28, 2021). Accordingly, I construe the amended complaint to assert a federal claim for deliberate indifference to medical needs.

To prevail on this claim, the plaintiff must prove that he suffered from an objectively serious medical condition of which the defendants knew and deliberately disregarded. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The objective element requires the plaintiff to show that he suffered from a serious medical condition, which is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Id*. at 30 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (internal quotations omitted)). The plaintiff must also plead that the defendants acted with a sufficiently culpable state of mind. *Woods v. Goord*, No. 97 Civ. 5143, 1998 WL 740782, at *7 (S.D.N.Y. Oct. 23, 1998).

Nothing in the record suggests that the plaintiff's alleged injuries warranted immediate attention after the DOC bus accident. The plaintiff did not tell Officers Savino or Ryan that he was injured, let alone that he was in "massive pain." (ECF No. 35 at ¶16.) Once he arrived at

Kings County Supreme Court, he told Captain Wilson that he needed medical attention for his shoulder and back; Captain Wilson directed Officers Savino and Ryan to take the plaintiff to Brooklyn House of Detention so that he could see a doctor.  When the clinic was unable to see the plaintiff, he was taken to Rikers Island, where a physician's assistant treated the plaintiff within twenty-four hours of the accident (ECF No. 51 at ¶ 16).  She wrote that the plaintiff "entered the clinic without noticeable difficulty," "never lost consciousness during or after the accident," and reported only "minor stiffness in [his] neck."  (ECF No. 50-4, Ex. D at 2.)  The steps that the physician's assistant took also demonstrate that the plaintiff's condition was not "objectively serious."  The physician's assistant prescribed "mild" pain medication, and scheduled an "as needed" follow-up appointment, which it does not appear that the plaintiff kept. (*Id.*)  Finally, the DOC Injury to Inmate Report notes that the plaintiff's "general physical exam [was] unremarkable."  (ECF No. 50-4, Ex. C at 1.)  In short, this record does not support the plaintiff's claim that he suffered serious injury, or that the defendants deliberately ignored his need for medical attention.  *Makell v. Cnty. of Nassau*, 599 F. Supp. 3d 101, 110 (E.D.N.Y. 2022) ("The record in this case is clear that plaintiff was immediately treated for his injuries. . . . Even if plaintiff believes his treatment was ultimately inadequate, by providing some treatment, defendants 'reasonably responded to the risk.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).  Nor can the plaintiff establish that he did not receive adequate care, and that the inadequacy caused or exacerbated a serious injury.  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).   The undisputed facts establish that the delay in his treatment was minimal, *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 459 F.3d 241 (2d Cir. 2006), and that the defendants "reasonably responded to the risk," and "cannot be said to have acted with deliberate indifference."  *Farmer*, 511 U.S. at 844.

11

Accordingly, the defendants' motion for summary judgment is granted. *See, e.g.*, *Harris v. City of New York*, No. 15-CV-6341, 2018 WL 1997974, at *6 (E.D.N.Y. Apr. 27, 2018). (plaintiff claiming head, neck, back and knee injuries did not establish a constitutional violation).

## CONCLUSION

For these reasons, the defendants' motion for summary judgment is granted.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        August 16, 2023